21 F.3d 1121
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James HICKS, Plaintiff-Appellant,
v.
GILA REGIONAL MEDICAL CENTER, Steve Jacobsen, Gilbert
Arziaga, Dr., and the other members of the Medical Executive
Committee, as individuals; Neal Apple, Dr., Robert Naimark,
Dr., Fred Fox, Dr., John Bell, Dr., Jim Hansard, Dr., Rick
Steinzig, Dr., Jack Moody, Dr., Defendants-Appellees.
 No. 92-2096.
 United States Court of Appeals, Tenth Circuit.
 April 15, 1994.
 
 ORDER AND JUDGMENT[1]
 Before SEYMOUR, Chief Judge, GOODWIN,[2] and MCKAY, Circuit Judges.
 
 
 1
 James O. Hicks, D.O., brought this action under 42 U.S.C.1983 against the Gila Regional Medical Center, the Center's administrator, its chief of staff, and members of its Medical Executive Committee. Dr. Hicks alleged that defendants denied him procedural and substantive due process and breached a contract with him by the manner in which they summarily suspended him and continued that suspension. Defendants moved for judgment as a matter of law under Fed.R.Civ.P. 50(a) at the conclusion of Dr. Hicks' case. The district court granted defendants' motion. Dr. Hicks appeals, and we affirm.
 
 
 2
 We review the grant of a Rule 50 motion for judgment as a matter of law under the standards previously applied to the grant of a motion for directed verdict or for judgment notwithstanding the verdict. See Fed.R.Civ.P. 50 advisory committee's note (1991 Amendment). Such a motion is properly granted "only if, viewing the evidence in the light most favorable to the nonmoving party, all the evidence and the inferences to be drawn from it are so clear that reasonable persons could not differ in their conclusions." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 893 (10th Cir.1991).
 
 
 3
 The facts giving rise to this suit are essentially undisputed. Dr. Hicks specialized in anesthesiology at the Center. Although he had previously practiced with a group of nurse anesthetists, that practice had ended and Dr. Hicks was practicing alone at the time of his suspension. His relationship with the nurse anesthetists and the hospital administration had deteriorated, culminating in the incident giving rise to his suspension. On May 11, 1989, Dr. Hicks made a comment to one of the nurses in a locker room next to an operating room. The nurse responded by punching Dr. Hicks in the face. That same day the administrator and chief of staff summarily suspended both Dr. Hicks and the nurse for three days under a provision of the Center's medical bylaws that allowed such action "to protect the life of any patient(s) or to reduce the substantial likelihood of immediate serious injury or damage to the health or safety of any patient, employee or other person present in the hospital." Aplt.App. at 86.
 
 
 4
 Dr. Hicks was notified on May 11 of his suspension and was also told that the Center's Medical Executive Committee (MEC) would promptly review it. Dr. Hicks went on a prescheduled vacation that extended beyond the time of his suspension. Before he left, he drafted a letter to the chief of staff responding to his suspension and addressing other ongoing problems. Although the MEC met on May 15 while Dr. Hicks was on vacation, the letter was not presented to the MEC at that meeting. The MEC decided to end the nurse's suspension but to continue the suspension of Dr. Hicks. On May 17, the administrator informed Dr. Hicks of the MEC decision to continue his suspension and also informed him of the administrative remedies provided by the Center's medical bylaws, specifically setting out his right to a hearing pursuant to the Center's fair hearing plan, to appellate review, and/or to an informal opportunity to present information to the MEC.
 
 
 5
 Dr. Hicks in turn wrote a letter to the administrator on June 3 stating in pertinent part:
 
 
 6
 At the present time I accept your suspension. I will not appear before a negative acting Executive Committee, nor before a prejudiced and biased Hearing Committee. Any action the Executive Committee, Hospital and the Board of Trustees has taken (or lack thereof) has been discriminating, biased and prejudiced.
 
 
 7
 ....
 
 
 8
 The Executive Committee had my complaints for their May 15th meeting. I have nothing else to say to them or you.
 
 
 9
 ....
 
 
 10
 I intend to follow through on my own without the help of the Executive Committee, Hospital Board or you.
 
 
 11
 Aplt.App. at 147. The administrator responded on June 9, pointing out to Dr. Hicks that the MEC did not have his letter response to his suspension at its May 15 meeting and stating that "[a]s a result of your being out of town and the timing of receipt of your May 13 letter, the [MEC], at your request, may choose to reconsider your suspension status." Aplee. Supp.App. at 9. Dr. Hicks did not respond to this letter and made no attempt to invoke his administrative remedies.
 
 
 12
 In this lawsuit, Dr. Hicks contends that defendants violated his procedural due process rights by invoking the summary suspension procedure on May 11 without providing him predeprivation notice and hearing, and by voting to continue the suspension on May 15 without providing him notice and an opportunity to be heard. Dr. Hicks further contends that the administrative remedies offered to him in the May 17 letter were constitutionally deficient because the hearing tribunal would have been biased, and the fair hearing plan under which the due process hearing would have taken place impermissibly placed the burden of proof on Dr. Hicks. He also contends that his right to substantive due process was violated because defendants' decision to suspend him was arbitrary and capricious. Finally, Dr. Hicks alleges that defendants breached their contract with him by failing to follow the medical bylaws provision under which an MEC decision is subject to automatic review even when a suspended physician does not invoke other available administrative remedies.
 
 
 13
 In granting defendants' Rule 50 motion, the district court carefully considered the above arguments in light of the evidence and the applicable law, and concluded that defendants were entitled to judgment. We have thoroughly reviewed the trial court's ruling and we are substantially in agreement with it. In particular, we have examined the medical bylaws with respect to both the composition of the fair hearing panel and the allocation of the burden of proof. The applicable provisions clearly establish a constitutionally adequate tribunal,[3] and also place the initial burden on the body whose decision is challenged to present evidence in support of that decision.[4] Further, we agree with the trial court's conclusion that Dr. Hicks waived not only the administrative remedies offered in defendants' May 17 letter, he also waived his right to automatic administrative review of the MEC decision. The letter Dr. Hicks wrote on June 3 rejecting defendant's offer of administrative remedies unambiguously states that Dr. Hicks intended "to follow through on [his] own without the help of the [MEC], Hospital Board or [the hospital administrator]." Aplee. App. at 147. Given this categorical rejection by Dr. Hicks of any further involvement in the Center's review procedures, defendants were justified in concluding that Dr. Hicks had waived all available administrative remedies.
 
 
 14
 Accordingly, the judgment is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Alfred T. Goodwin, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation
 
 
 [3]
 The fair hearing plan states that
 A medical staff or board member is not disqualified from serving on a hearing committee merely because he participated in investigating the underlying matter at issue or because he has heard of the case or has knowledge of the facts involved or what he supposes the facts to be. Only under extreme circumstances, shall a member of the body whose adverse recommendation or action occasioned the hearing serve on the hearing committee.
 Aplt.App. at 99-100. This provision on its face is sufficient to pass constitutional muster under applicable law. See Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n., 426 U.S. 482, 491-93 (1976).
 
 
 [4]
 The applicable provision thus states that
 the body whose adverse action or recommendation occasioned the hearing has the initial obligation to present evidence in support thereof, but the practitioner thereafter is responsible for supporting, by a preponderance of the evidence, his challenge that the adverse action or recommendation lacks any substantial factual basis or that the basis or the conclusions drawn therefrom are either arbitrary, unreasonable, or capricious.
 Aplt.App. at 102. Moreover each party may call, examine and cross-examine witnesses, introduce exhibits, and rebut any evidence. See id. at 100-01.